# SUPREME COURT.

GIBSON L. DOUGLASS, committee, &c., &c., agt. THE MAYOR, ALDERMEN, &c., OF THE CITY OF NEW YORK.

*Public administrator — when the city of New York not liable for his acts.*

The mayor, aldermen and commonalty of the city of New York are liable for all moneys received by the public administrator according to law, and for the faithful execution of the duties of his office. But for acts illegal and done outside of his office the city is not liable.

Thus where the public administrator, who has in certain cases authority to take charge of the goods, chattels and personal effects of *persons dying intestate;* took into his possession money and property of a *third person* as of the effects of a decedent intestate:

*Held,* that the city was not responsible for his act.

*Levin* agt. *Russell* (42 *N. Y.*, 254) applied.

*Also, held,* that the record of a judgment against the public administrator, as such, is not evidence in an action against the city of New York, to establish a liability, where the judgment was recovered for acts of the public administrator, which he was not by law authorized to perform.

*Special Term, July,* 1878.

*John Hubbell,* for plaintiff.

*W. C. Whitney* and *F. L. Stetson,* for defendants.

VAN VORST, J. — It is urged by the learned counsel for the plaintiff that this is not an action to enforce an original liability but to give effect to a judgment by which the plaintiff's rights had been determined, and the liability of the defendant, in law and in fact, fixed.

Certain moneys and property which had been received by the public administrator of the city of New York, as and of

the effects of Richard S. Green, have been adjudged, in an action in favor of the plaintiff against the public administrator, to be the money and property of Catharine M. Bingham, a lunatic, of whose estate the plaintiff is committee. The judgment directed the public administrator to pay over the same to the plaintiff, or so much thereof as remains in his possession.

Upon the trial of this action, the plaintiff offered in evidence the record of the judgment against the public administrator, and claimed that it was final and conclusive and binding upon the defendant.

The admission of the record was objected to by the counsel for the defendant upon the ground that the defendant is not bound by the terms of a judgment against the public administrator, in an action to which it was not made a party.

The public administrator holds his office from the defendant (*R. S., vol.* 2, *p.* 118, *sec.* 1), and the defendant is made responsible for the application of all moneys received by the public administrator *according to law,* and for the due and faithful execution of all the duties of his office (*Idem, p.* 127, *sec.* 42).

It has been adjudged that he is the agent of the defendant (*Matthews* agt. *The Mayor,* 1 *Sand.,* 132; *Nash* agt. *The Mayor,* 4 *id.,* 1; *Glover* agt. *The Mayor, &c.,* 7 *Hun,* 232), and under the case of *The People* agt. *The Supervisors of Delaware* (21 *How. Pr.,* 50, *and the cases there cited*), and upon principle, if the defendant is liable for the action or default of the public administrator in this instance, I should conclude that the judgment is evidence to establish the title to the money.

But the defendant is not liable for every thing done by a person holding the office of public administrator, although he professes to act as such.

The defendants are liable for all money the public administrator shall receive according *to law,* and for the faithful execution of his office.

In right of his office he has, in certain cases, authority to collect and take charge of the goods, chattels, personal estate and debts *of persons dying intestate.*

That does not authorize him to take property which does not belong to an intestate. And the letters of administration, which he must in each case obtain, are evidence of his authority in "cases in which he was by law authorized to act" (*Revised Statutes, vol.* 2, *p.* 121, *sec.* 16).

For acts illegal or done outside of his office the defendants would not be liable. *Levin* agt. *Russell* (42 *N. Y.*, 254) so holds.

In that case *Russell, the public administrator,* was sued, *individually,* for taking property of. the plaintiff, as that of the intestate.

GROVER, J., says section 3 of the act (2*d Statutes at Large,* 123) prescribes the powers and duties of the public administrator ·and only authorizes him to take the goods of· the intestate. "Section 42, page 131, making the corporation of the city liable for the application of all moneys received by the public administrator, according to law, and for the due and faithful execution of all the duties of office, confers no power upon him to seize and detain the goods of others in which the deceased had no interest. It follows that if the goods in question were, as claimed, the property of the plaintiff the action for detaining them from him was well brought against the defendant personally."

In that case it was urged, in defense of the public administrator, that he "acted in good faith, believing it was the property of the intestate at the time of his death."

Now, I apprehend, that if instead of prosecuting Russell, individually, he had been proceeded against in his character as public administrator and a judgment had gone against him, that the plaintiff, failing to collect from Russell, could not have succeeded against the municipal corporation, and that the judgment upon such a state of facts would not conclude it.

Douglass agt. The Mayor.

Notwithstanding such judgment, it must have been held that the act was the individual act of Russell, for which the city corporation was not responsible.

Section 43 of the statute under consideration I have no idea was overlooked by the learned judge in *Levin agt. Russell*. That section provides that all persons aggrieved by any unauthorized act or omission of the public administrator shall have the same remedies against the corporation for the same as they would have against any executor.

I think it will appear, from an examination of the case, that the act of receiving the money and property in question was not wholly unauthorized by the parties in interest; but if otherwise, an executor would be liable individually, and not in his representative character, for property taken by him to the injury of others, which did not belong to the estate of the testator. And the facts appearing in the case under consideration lead to the conclusion, that the public administrator, personally, if any one, is liable for the moneys of Miss Bingham, and that the judgment roll is not evidence to fasten a liability upon the city corporation.

It appears, by the facts agreed upon, " that Richard S. Green died in the city of New York, in the month of March, 1870, leaving no will or next of kin. His friends came down from Troy to hunt up his property which, with the exception of some money which stood to his credit in the National Trust Company, was chiefly in the hands of certain persons who claimed an interest therein. Mr. Hubbell was employed as attorney for all the parties in interest, and his efforts led to the discovery of the property. He notified the public administrator of the death of Green and advised him that the property should be taken charge of, and also of the position of Heith and Newcombe (the claimants) in reference thereto." The administrator employed Mr. Hubbell in the premises, and he afterwards took the property and money in his possession. Mr. Hubbell testified that Miss Bingham came down with the others in quest of the property; that he represented

all the parties in interest, and that the plaintiff himself aided in the discovery of the property.

There is no reason to question the good faith of the public administrator in taking possession of this property.

It does not appear that he was advised before he took possession that any part of the property or money belonged to Miss Bingham.

If they did so advise him, then his act in taking so much as belonged to Miss Bingham, was willful and the city corporation would not be liable.

If they did not interpose their claim at the time but allowed him to act in ignorance of the fact that he was illegally taking, as the property of the intestate, the property of Miss Bingham, then, I think, plaintiff should not hold the city corporation liable, for the public administrator, in such act, would not be the agent of the city corporation, but of those with and for whom he was acting.

It appears to me it was wholly unnecessary for the prosecution of Miss Bingham's rights to secure the intervention of the public administrator. Her own property she could as readily have secured from those in whose custody it was, as from the public administrator afterwards.

For these reasons I think the city corporation is not concluded by the judgment record against the public administrator, and that its liability must be determined by all the facts in the case, which I conclude to be adverse to the plaintiff's right to recover in this action.

But suppose I am wrong in this conclusion and the judgment be evidence, what does it determine and judge? It declares that the sum of $6,080.59 collected and received by the public administrator as belonging to the estate of Richard S. Green, deceased, in fact and in law belonged to, and was the property of, the said Catharine M. Bingham, and did not, in fact or in law, belong to the estate of Richard S. Green, and it was ordered that out of the said sum of $6,080.59 belonging to said Catharine M. Bingham, or so much thereof

as is now in the hands of the defendant (the public adminis-trator), the said defendant do pay to John Hubbell, Esq., the attorney for the plaintiff, the sum of $235.75 for his costs as taxed, and five per cent upon the amount of the recovery, as an extra allowance in addition thereto, and that he pay to John Todd, counsel for the defendant, the sum of $250 as an allowance to him in lieu of costs, and that the balance of said sum of $6,080.59, or so much thereof as the defendant now has in his possession or under his control, be paid by him to the plaintiff.

The amount in the hands of the public administrator at the time of the recovery of this judgment, of the moneys and property received by him as and for the estate of Green, including the plaintiff's moneys, was the sum of $4,452.44. The residue of the moneys and proceeds of property which had been received by him, had been expended in fees, costs and charges incident to the recovery of the property and the administration of the estate.

These charges in the aggregate amounted to nearly $4,000. These expenses and charges embraced all the property acknowledged to be Green's, and $1,628.15 of the moneys adjudged to belong to Miss Bingham.

These charges include the commissions of the public administrator, $255.52, the residue was moneys actually dis-bursed by him.

The sum of these charges is large considering the amount of the estate, but it appears to have been afflicted with trouble and litigation from the beginning.

It is to be greatly regretted that the estates of decedents are subject to such burdens. But the correctness and legality of the disbursements and charges, have been approved by the surrogate and sanctioned by his order, and one or more of them by the order of this court.

I cannot, therefore, pass upon the propriety of these expenses.

One item is a judgment for costs amounting to $623.22,

in a suit brought by Miss Bingham against the public administrator, and which suit was dismissed for want of prosecution.

The propriety of the defense of that suit is shown by the facts, appearing upon the record, that the attorney for the plaintiff, on the hearing before the referee, assented to the motion dismissing the complaint.

Mr. Hubbell, the attorney for the plaintiff, was paid by the public administrator the sum of $1,275 for his professional aid and services in and about discovering the property, and afterwards rendered, on the retainer of the administrator.

Deducting the sum total of these charges and disbursements, there remained in the hands of the public administrator, a balance applicable to the judgment sought to be enforced in this action, the aforesaid sum of $4,452.44, and which amount he has fully paid over according to the express directions of the judgment.

This, I think, meets the exact demands of the judgment.

And for the reasons stated, I conclude that the plaintiff has no just or equitable claim or demand against the defendants in this action.

I can see no justice in calling upon the defendants to make up to the plaintiff the diminution of the moneys in question, expended in searches for the property and legal charges incident to the same, a considerable portion of which was paid to the attorney for Miss Bingham and the plaintiff, and for fees and charges imposed upon the administration, and in the defense of an action needlessly brought by her, and which was dismissed for want of prosecution, by the consent of her attorney and counsel.

The plaintiff's complaint must, therefore, be dismissed, but without costs.